## No. 17-1625

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ANCIENT COIN COLLECTORS GUILD,
*Claimant-Appellant,*

3 KNIFE-SHAPED COINS, 7 CYPRIOT COINS, 5 OTHER CHINESE COINS,
*Defendants.*
_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

(The Honorable Catherine C. Blake, United States District Judge)
_____

## BRIEF OF APPELLEE
_____

STEPHEN M. SCHENNING
Acting United States Attorney

Molissa H. Farber
Assistant United States Attorney
U.S. Attorney's Office, District of Maryland
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4862

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................1

TABLE OF AUTHORITES……………………………………………………...4

I.    STANDARD OF REVIEW .........................................................................7

II.   STATEMENT OF THE ISSUE PRESENTED ...........................................9

III.  STATEMENT OF THE CASE...................................................................10

    A.   Congress Enacted The CPIA to Help Countries Protect their Cultural Heritage and It Reflects a Balancing of Diplomatic Needs and Import/Export Policies. ...........................................................................................................11

    B.   The Guild Imported The Defendant Coins for the Sole Purpose of Challenging the Validity of the CPIA in Court. ...................................................14

    C.   In Response to the Coins' Detention, the Guild Denied Having Satisfactory Evidence Regarding When the Coins Left China and Cyprus. ...........................15

    D.   The Guild Fully Challenged the Validity of the CPIA in its Declaratory Judgment Action and both the District Court and the Fourth Circuit Rejected those Challenges...........................................................................................................16

    E.   The Guild Continued to Press its Rejected Validity Arguments in the Current Asset Forfeiture Proceeding and Sought Discovery into Topics Relevant Only to the CPIA's Underlying Legitimacy ...................................................................19

       1.   The district court's June 3, 2014 opinion clarified the scope of the litigation in light of the Fourth Circuit's 2012 holdings..................................20

       2.   Despite the district court's clarification, the Guild continued to seek discovery into foreclosed topics and press underlying validity arguments.....21

    F.   The District Court Applied the Burden of Proof-Shifting Framework set Forth by this Court and Others in CPIA cases and Found that the Government

Established a Prima Facie Case, Given the Guild's Concessions, and that the Guild Could Not Establish a Valid Defense to Forfeiture. ..............................................23

IV.    SUMMARY OF ARGUMENT ..................................................26

V.    ARGUMENT ...........................................................29

A.    The District Court Correctly Read the Fourth Circuit's Opinion as Foreclosing Further Challenge to the CPIA and the Designated Lists. ...............29

B.    The District Court Properly Disallowed Discovery into Foreclosed Issues, including the Underlying Legitimacy of the CPIA and the Validity of the Designated Lists. .................................................................33

    1.    The district court acted within its discretion when it denied discovery into topics relating to the underlying legitimacy of the CPIA and the designated lists, their drafting, and their development. ...............................................34

    2.    The court's decision to deny discovery related to the coins' placement on the designated lists was within its discretion. ...................................................37

    3.    The court did not abuse its discretion when it denied the Guild legal discovery. ..........................................................................41

C.    The Government Met its Burden of Proof and the Guild Failed to Rebut, Entitling the Government to Summary Judgment. .............................................45

    1.    The Government met its prima facie case for forfeiture. .......................45

    2.    Once the burden shifted to the Guild, the Guild failed to establish a valid exception or defense to forfeiture under the CPIA. .........................................49

    3.    The government was entitled to summary judgment. ..............................58

D.    The Fourth Circuit has Already Considered and Rejected the Majority of the Guild's Remaining Arguments and it Should do so Again. ................................58

    1.    The district court did not abuse its discretion when it struck the Guild's amended answer. ..............................................................................59

    2.    The Fourth Circuit foreclosed the Guild's fair notice argument, which lacks logical sense anyway. ..............................................................62

3.    The Guild brought the same alleged irregularities in the CPIA's implementation to the Fourth Circuit's attention in the previous action and this Court found no merit in those arguments. ......................................................64

VI.    CONCLUSION...............................................................................66

# Table of Authorities

## Cases

*Ancient Coin Collectors Guild v. Customs and Border Protection*, 698 F.3d 171 (4th Cir. 2012) ................................................................................ passim

*Ancient Coin Collectors Guild v. Customs and Border Protection*, 801 F. Supp. 2d 383 (D. Md. 2011) ............................................................ 16, 17, 18, 31

*Daubert v. Merill Dow Pharms., Inc.*, 509 U.S. 579 (1993) .......................... 50, 54

*Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133 (7th Cir. 2009) ............................................................................................. 7, 59

*Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730 (4th Cir. 1974) ............................................................................................... 42

*E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. WMN-08-CV-984, 2010 WL 2572809 (D. Md. June 22, 2010) ........................... 42

*Fish v. Air & Liquid Sys. Corp.*, No. GLR-16-496, 2017 WL 697663 (D. Md. Feb. 21, 2017) .......................................................................................... 42

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .................................... 8

*Hatchett v. U.S.*, 330 F.3d 875 (6th Cir. 2003) ................................... 7, 59

*Johnson v. Am. Towers, LLC*, 781 F.3d 693 ........................................... 7

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160 (4th Cir. 2014) ............................................................................................. 34

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ........................... 50

*Myers v. Finkle*, 950 F.2d 165 (4th Cir. 1991) ..................................... 7

*Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 182 Fed. App'x 267 (4th Cir. 2006) ............................................................................................. 50, 51

*Preziosi v. United States*, No. CIV. RDB-11-02913, 2012 WL 2798771 (D. Md. July 9, 2012) ......................................................................................... 60

*Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187 (4th Cir. 2003) ...................... 34, 45

*S.E.C. v. SBM Inv. Certificates, Inc.*, No. DKC-2006-0866, 2007 WL 609888 (D. Md. Feb. 23, 2007) ............................................. 42

*Sherman v. Westinghouse Savannah River Co.*, 263 F. App'x 357 (4th Cir. 2008) ................................................................... 50

*State Exchange Bank v. Hartline*, 693 F.2d 1350 (11th Cir. 1982) .................. 7, 60

*United States v. Eighteenth Century Peruvian Oil on Canvas Painting of Doble Trinidad*, 597 F. Supp. 2d 618 (E.D. Va. 2009) .............................. 24, 47

*United States v. 323 Quintales of Green Coffee Beans*, 21 F. Supp. 3d 122 (D.P.R. 2013) ................................................... 52, 53

*United States v. An Original Manuscript Dated Nov. 19, 1778*, No. 96 CIV. 6221, 1999 WL 97894 (S.D.N.Y. Feb. 22, 1999) ............................... 47

*United States v. Dinkins*, 691 F.3d 358 (4th Cir. 2012) .......................... 8

*United States v. One Tyrannosaurus Bataar Skeleton,* No. 12 Civ. 4760, 2012 WL 5834899 (S.D.N.Y. Nov. 14, 2012) ............................... 51, 52

*United States v. Schultz*, 178 F. Supp. 2d 445 (S.D.N.Y. 2002) ................. 12

*Waste Mgm't Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001) ...... 7, 60, 62

**Statutes**

19 CFR 12.104c ................................................ 5, 16
19 U.S.C. § 2604 ...................................... passim
19 U.S.C. § 2606 ...................................... passim
19 U.S.C. § 2609 .............................. 14, 54, 56, 63

**Rules**

Fed. R. Civ. P. 26 .................................. 36, 41, 43
Federal Rule of Civil Procedure 12 .............................. 28, 60
Federal Rule of Evidence 702 ............................... 50

**Other**

Patty Gerstenblith, <u>The Public Interest in the Restitution of Cultural Objects</u>, 16 Conn. J. Int'l L. 197, 198—99 (2001) ................................................................... 11

# I.   <u>STANDARD OF REVIEW</u>

The standard of review for grants of summary judgment is de novo.[1] The Fourth Circuit has not directly stated the standard of review for a court's decision to strike pleadings,[2] but other circuits have applied an abuse of discretion standard.[3] The standard of review for evidentiary rulings, including decisions to exclude expert

---

[1] *See, e.g.*, *Myers v. Finkle*, 950 F.2d 165, 167 (4th Cir. 1991).

[2] The Guild cites two Fourth Circuit cases to support its statement that decisions to strike pleadings are reviewed de novo.  Br. at 16.  Neither case appears to support this proposition.  *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 706--07 (4th Cir. 2015) (applying de novo standard to district court's granting of motion to dismiss, not motion to strike); *Waste Mgm't Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001) (same).  *Cf. Gilmore*, 252 F.3d at 347 (determining district court "did not err" in striking affirmative defense, i.e., abuse of discretion/clear error standard).

[3] *See, e.g.*, *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133 (7th Cir. 2009) (applying abuse of discretion standard to district court's *sua sponte* decision to strike counterclaim); *Hatchett v. U.S.*, 330 F.3d 875, 887 (6th Cir. 2003) ("We review the grant of a motion to strike a pleading for abuse of discretion."); *State Exchange Bank v. Hartline*, 693 F.2d 1350 (11th Cir. 1982) (applying abuse of discretion standard to district court's decision to dismiss a claim, equating it with "the power to strike a pleading," which "is inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions").

witnesses, is abuse of discretion.[4]  Legal conclusions regarding constitutional claims

are reviewed de novo.[5]

---

[4] *General Elec. Co. v. Joiner*, 522 U.S. 136, 141--42 (1997).

[5] *U.S. v. Dinkins*, 691 F.3d 358, 382 (4th Cir. 2012).

## II.    STATEMENT OF THE ISSUE PRESENTED

In the previous iteration of this case, the Ancient Coin Collectors Guild (the "Guild," "ACCG," or "Appellants") challenged the validity of the Cultural Property Implementation Act ("CPIA") before this Court.  They lost.  The Court considered and rejected the Guild's many complaints about the CPIA, ultimately affirming the district court's determination that the listing and detention of the coins at issue did not exceed governmental authority. The Fourth Circuit held that the CPIA allowed the government to identify coins on designated lists as subject to forfeiture by type and category, rather than on a coin-by-coin basis.  Moreover, this Court found that the coins appeared on designated lists lawfully.

But in this asset forfeiture proceeding following that case, the Guild continued to challenge the CPIA's legitimacy and the lawfulness of listing the defendant coins as subject to forfeiture.  The district court determined that the Fourt Circuit's 2012 opinion foreclosed these challenges.

Did the district court correctly prevent the Guild from relitigating the validity of the CPIA and the designated list of coins subject to forfeiture?

# III.   **STATEMENT OF THE CASE**

The Guild had a plan.  Angry at import regulations restricting certain ancient coins from Cyprus and China implemented through the CPIA, a team of coin-collectors and lawyers at the Ancient Coin Collectors Guild outlined a test case. Their test case would involve illegally importing some of the coins impacted by the regulations and then using the subsequent litigation as a platform to challenge the underlying legitimacy of those regulations.

The test case, unfortunately for the Guild, did not go to plan.

Despite thorough argument at both the district and appellate levels, the Guild lost their challenge to the validity of the regulations before both the district court and this Court.  Both courts rejected the Guild's arguments about the invalidity of the CPIA and its implementing regulations.  The Supreme Court denied certiorari.

After that loss, all that remained was for the courts to make the ultimate determination of the coins' ownership in an asset forfeiture proceeding.   But litigating a run-of-the-mill asset forfeiture proceeding was never part of the Guild's plan.  Their plan was to challenge the validity of the regulations, not to ultimately win ownership of a bunch of relatively low-value ancient coins.  So the Guild used the asset forfeiture proceeding as another chance to repeat the same rejected arguments about the legitimacy of the CPIA and its implementing regulations.  They attempted to get discovery into issues relevant only to the validity of the regulations.

And they produced expert witnesses whose opinions and conclusions, if accepted, invalidated the regulations and designated lists.

The district court disallowed the Guild from using the asset forfeiture case to relitigate the same validity arguments they made and lost in their previous case. This appeal followed.

### A. Congress Enacted The CPIA to Help Countries Protect their Cultural Heritage and It Reflects a Balancing of Diplomatic Needs and Import/Export Policies.

Congress passed the CPIA in 1982 following a United Nations-organized conference to address the "theft, clandestine excavation, and illicit export" of cultural articles.[6] Leaving antiquities unprotected resulted in their looting, which caused "an essential loss of context" for a country's archaeological heritage because looted historical sites could no longer be accurately reconstructed without the "historic, cultural and scientific information" provided by the antiquities in the proper contexts.[7]

The CPIA is a delicate ecosystem. As Judge Rakoff of the Southern District of New York noted in dicta in a criminal case brought under a different statute, the

---

[6] *Ancient Coin Collectors Guild v. Customs and Border Protection*, 698 F.3d 171, 174 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 1645 (2013) [hereafter, "*ACCG*"].

[7] Patty Gerstenblith, *The Public Interest in the Restitution of Cultural Objects*, 16 Conn. J. Int'l L. 197, 198--99 (2001).

CPIA "takes a . . . nuanced and complicated approach to when and under what circumstances [cultural] property can be imported into the United States."[8]  The complexity of this approach, Judge Rakoff explained, "is because the Act is chiefly concerned with balancing foreign and domestic import and export laws and policies, not with deterring theft."[9]  The Fourth Circuit recognized this balance in 2012 when it issued its opinion in the previous iteration of *Ancient Coin Collectors Guild*, noting that in drafting the CPIA, Congress "sought to strike a balance" between competing foreign and domestic interests.[10]

Section 2604 of the CPIA requires that items covered by the regulations be listed in a "sufficiently specific and precise" way so as to provide "fair notice . . . to importers" as to what material is restricted.[11]  The lists upon which restricted items appear are referred to in this brief as "designated lists."  The process of placing items on a designated list is lengthy and involves a request from the State Party in need of protection, an expert analysis by the Cultural Property Advisory Committee

---

[8] *United States v. Schultz*, 178 F. Supp. 2d 445, 449 (S.D.N.Y. 2002), *aff'd,* 333 F.3d 393 (2d Cir. 2003).

[9] *Id.* (comparing CPIA to 18 U.S.C. § 2315, which "only applies in cases of intentional theft).

[10] *ACCG*, 698 F.3d at 181.

[11] 19 U.S.C. § 2604.

("CPAC"), and review by the state department.[12]  Items may be placed on the list in groupings "by type or other appropriate classification."[13]

Once material is placed on a designated list, Section 2606 provides that it may not be imported into the United States unless either:  1) the State Party that requested restrictions provides documentation that its export was legal; or 2) the importer presents "satisfactory evidence" that the material left the State Party not less than ten years before the date of import, or else on or before the date the material first appeared on a designated list.[14]  Section 2606(b) defines "satisfactory evidence" in lengthy detail; notably, all of the permissible proofs require evidence as to the history of the specific coins that have been seized, not the history of the type or category of coins that have been seized.[15]  For items with unknown provenance, "a statement expressing 'belief' that the article meets one of the exemptions may suffice."[16]

---

[12] See *ACCG*, 698 F.3d at 176--77 (discussing process).

[13] 19 U.S.C. § 2604.

[14] 19 U.S.C. § 2606(a), (b)(2); *ACCG*, 698 F.3d at 176--77.

[15] 19 U.S.C. § 2606(b).

[16] *ACCG*, 698 F.3d at 177 (citing 19 U.S.C. §§ 2606(c), (c)(1)(B), (c)(2)(B).

Customs may seize articles appearing on the designated lists when they first enter the United States, and then if the importer cannot demonstrate lawful export under Section 2606, forfeiture proceedings may begin.[17]

### B. THE GUILD IMPORTED THE DEFENDANT COINS FOR THE SOLE PURPOSE OF CHALLENGING THE VALIDITY OF THE CPIA IN COURT.

The Ancient Coin Collectors Guild, according to its Executive Director Wayne Sayles, is a lobbying organization with the "ultimate goal" of opposing import restrictions on coins of any age or place.[18]  In pursuit of this end, the Guild planned a "test case" that would involve importing several types of ancient Chinese and Cypriot coins appearing on the designated lists subject to regulation in order to challenge the legality of the import restrictions.[19]  The Guild specifically acquired coins "for which there is no known province" after the dates the restrictions went into effect, making specific proof of the date the coins left Cyprus or China for the purpose of 2606(b)(2) difficult.[20]  The Guild planned "to fully declare these pieces with the expectation of seizure by U.S. Customs."[21]  The actual coins were of little

---

[17] *Id.* (citing 19 U.S.C. § 2609).

[18] JA 651 (Sayles Dep.).

[19] JA 389 (Pett Dep.); JA 712 (Sayles Dep.); JA 1280 (Claimant responses to government's request for admission).

[20] JA 1283 (Feb. 12, 2009 email from P. Tompa to P. Dawson et al.).

[21] JA 1284 (Feb. 12, 2009 email from W. Sayles to P. Dawson et al.).

to no value to the Guild.[22]   The Guild imported the coins into the United States through BWI airport in April of 2009.[23]   The coins were accompanied by an invoice from a London auction house ("Spink") that described the coins by country of heritage, approximate age, type, material, appearance, and classification.[24]

### C.    IN RESPONSE TO THE COINS' DETENTION, THE GUILD DENIED HAVING SATISFACTORY EVIDENCE REGARDING WHEN THE COINS LEFT CHINA AND CYPRUS.

Based in part upon matching the description in the Spink invoice and the items covered by the designated lists for Cyprus and China,[25] Customs detained the coins shortly after their import and gave the Guild an opportunity to demonstrate the lawfulness of the import.[26]   By letter, the Guild stated that it was "unable to provide the requested certification or evidence in accordance with" 19 CFR 12.104c, the federal guideline corresponding to 19 U.S.C. § 2606.[27]   The Guild did not know if the coins "were first found in the ground of either China or Cyprus."[28]   The Guild's

---

[22] JA 392 (Pett Dep.).

[23] JA 183 (Custody Receipt).

[24] JA 1037 (Spink Invoice).

[25] JA 238 (Stroter Dep.).

[26] JA 1171--72 (Notice of Detention and Amended Notice of Detention).

[27] JA 187 (May 27, 2009 Letter from P. Tompa to E. Alexander).

[28] *Id.*

letter also set forth its legal theories that the coins' foreign export control status in the U.K. was both relevant and decisive since the Guild exported the coins from there, and that the regulations required the government to prove location of first discovery as "a prerequisite for seizure"---theories it continues to advance to this day.[29]

### D. THE GUILD FULLY CHALLENGED THE VALIDITY OF THE CPIA IN ITS DECLARATORY JUDGMENT ACTION AND BOTH THE DISTRICT COURT AND THE FOURTH CIRCUIT REJECTED THOSE CHALLENGES.

The Guild's original plan, as the district court later observed, "was to challenge the validity of the import restrictions" in an asset forfeiture proceeding.[30] After several months passed with no forfeiture action, the Guild filed its own action, "alleging violations of the Administrative Procedure Act ("APA"), the International Emergency Economic Powers Act ("IEEPA"), the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), and the First and Fifth Amendments to the U.S. Constitution," as well as alleging that the government defendants acted "ultra vires."[31]  The litigation stemming from that complaint is referred to throughout this brief as the Declaratory Judgment ("DJ") Action.

---

[29] *Id.* (citing 19 CFR 12.104c).

[30] *Ancient Coin Collectors Guild v. Customs and Border Protection*, 801 F. Supp. 2d 383, 416 (D. Md. 2011) [hereafter, *ACCG* DJ].

[31] *ACCG* DJ, 801 F. Supp. 2d at 387.

The district granted the United States' motion to dismiss the DJ Action.[32]  The district court considered the Guild's validity challenges, noting that the validity of the agency actions "imposing import restrictions on Cypriot and Chinese coins . . . is squarely before this court."[33]  The court determined that the agency actions in question were not reviewable under the APA.[34]  The district court also analyzed the Guild's argument that the import restrictions require the government prove a particular coin was "first discovered" in China or Cyprus before that coin could be seized.[35]  The court determined that "import restrictions on Chinese and Cypriot coins, which have the effect of barring the importation of coins with unknown find spots, do not exceed the State Department's authority under the CPIA."  *Id.* at 409.  The court dismissed the remainder of the Guild's claims.

The Guild appealed and this Court upheld the district court's decision in a published opinion.[36]  This Court determined that "a searching substantive review of the State Department's diplomatic negotiations or [Cultural Property Advisory

---

[32] *See generally*, *ACCG* DJ, 801 F. Supp. 2d at 383.

[33] *Id.* at 399.

[34] *Id.* at 404.

[35] *Id.* at 406-409.

[36] *See generally*, *ACCG*, 698 F.3d at 171.

Committee's] CPAC's application of its archaeological expertise would be singularly inappropriate in this forum."[37]  Further, this Court was "not persuaded" by the Guild's argument that the government "effectively read the 'first discovered' requirement out of the statute," holding that the CPIA allows the government to "designate items by 'type or other appropriate classification.'"[38]  The Fourth Circuit emphasized that the government was "certainly not required to impose restrictions on a coin-by-coin basis," which "would make the statutory scheme utterly unworkable in practice."[39]  This Court agreed with the district court that the government "need not demonstrate that the articles are restricted; rather, the statute 'expressly places the burden on importers to prove that they are importable.'"[40]

This Court held that the Chinese and Cypriot coins at issue in this case were listed "in accordance with 19 U.S.C. § 2604," which requires the descriptions on the designated lists to be sufficiently precise to provide fair notice to importers of the restricted material.[41]  The Court observed that compliance with Section 2606 of the

---

[37] *Id.* at 179.

[38] *Id.* at 182 (quoting 19 U.S.C. § 2604).

[39] *Id.*

[40] *Id.* (quoting *ACCG* DJ, 801 F. Supp. 2d at 408).

[41] *Id.* at 183.

statute---which governs the proof importers must show to establish lawful import---required that the Guild show that "the Cypriot coins left Cyprus prior to 2007 and that the Chinese coins left China prior to 2009."[42]  The Guild, this Court noted, "never so much as attempted" to make such a showing.[43]

The Guild appealed to the Supreme Court and the Supreme Court denied certiorari.[44]

### E. THE GUILD CONTINUED TO PRESS ITS REJECTED VALIDITY ARGUMENTS IN THE CURRENT ASSET FORFEITURE PROCEEDING AND SOUGHT DISCOVERY INTO TOPICS RELEVANT ONLY TO THE CPIA'S UNDERLYING LEGITIMACY

The instant case is an asset forfeiture proceeding based on the same coins that were the subject of the DJ Action.[45]  The Guild's answer raised issues that were resolved by the Fourth Circuit's 2012 decision, including the underlying validity of the regulations and procedures implementing the CPIA.[46]  The government filed a

---

[42] *Id.*

[43] *Id.*

[44] 133 S. Ct. 1645 (2013).

[45] *See* JA 9--16 (Verified Complaint for Forfeiture); JA 17--18 (Warrant for Arrest in Rem).

[46] JA 28--36 (Answer).

motion to strike the Guild's answer[47] and the Guild filed an amended answer with

many of the same problems as the first answer ten days later.[48]

### 1. The district court's June 3, 2014 opinion clarified the scope of the litigation in light of the Fourth Circuit's 2012 holdings.

Following a number of subsequent filings, the district court issued a

memorandum opinion clarifying scope of the litigation and striking the Guild's

amended answer.[49]  The Guild's answers attempted to "expand the scope of this

forfeiture action well beyond the limits set by the Fourth Circuit in its controlling

opinion," in part by raising "challenge[s] to the validity of the regulations" that the

Fourth Circuit's 2012 opinion foreclosed.[50]

The court construed the government's motion to strike the original answer as

a motion to strike the amended answer and granted it.  In so doing, the district court

held that "much of the answer and most if not all of the affirmative defenses seek to

relitigate issues concerning the validity of the regulations and the government's

decision to impose import restrictions on certain Cypriot and Chinese coins."[51]

---

[47] *Coins*, ECF No. 12 (Government motion to strike).

[48] *See* JA 43--55 (Amended Answer); JA 71--85 (redline of Amended Answer).

[49] JA 105--06 (Jun. 3, 2014 Mem. Op.).

[50] *Id.* at 105.

[51] *Id.* at 106.

These foreclosed claims and defenses included the argument "that the government will be required to establish that the coins were 'first discovered within' and 'subject to the export control' of either Cyprus or China," which the court held was "foreclosed by the Fourth Circuit's opinion."[52]

> ### 2.    Despite the district court's clarification, the Guild continued to seek discovery into foreclosed topics and press underlying validity arguments.

The parties proceeded with discovery throughout 2015 and 2016, hiring an object conservator to photograph the defendant property[53] and taking depositions of a Spink employee and of Jerry Stroter, one of the CBP officials involved in the decision to detain and seize the coins. But despite the district court's instruction to limit litigation to the narrow set of issues to be resolved, the Guild continued to seek discovery into foreclosed issues.[54]

The court ruled on several discovery disputes between the parties. First, the court held that the Guild was not entitled "to general discovery from the government about the circulation of Cypriot and Chinese coins," noting that "to the extent the

---

[52] *Id.* (quoting *Coins*, ECF No. 18 at 1--2 (surreply); *ACCG*, 698 F.3d at 181--82).

[53] JA 1230--1276 (photos of coins). To the extent this motion refers to specific coins, the coins are referenced by the number the object conservator assigned to them on July 2, 2015. *See* JA 1229 (coin documentation list).

[54] *See generally*, *Coins*, ECF No. 51 (Claimant's motion to compel); *Coins*, ECF No. 47 (Claimant's motion to test sufficiency of discovery responses).

Guild argues that the government must prove 'first discovery,' beyond demonstrating that the coins at issue appear on the designated list, that argument is foreclosed by the CPIA and the Fourth Circuit opinion [in *ACCG*]."[55]

Next, the court denied the Guild's request for additional 30(b)(6) deposition testimony, following the deposition of Carlly Luckman, a Supervisory Program Manager in the Baltimore field office of CBP.[56] Ms. Luckman's deposition ended after the Guild's counsel began a line of questioning pertaining to the foreclosed "first discovered" issues and the government's legal theories in the instant case.[57] In denying additional discovery, the court held that "[t]he Guild primarily seeks information concerning the government's legal positions, which is generally beyond the scope of a proper 30(b)(6) deposition."[58] The court further determined that, "[t]o the extent the Guild seeks factual information concerning the basis for seizure and detention," the Guild already received that discovery through Jerry Stroter, another CBP witness, and Carlly Luckman.[59]

---

[55] JA 486--87 (Feb. 11, 2016 Mem. and Order).

[56] JA 1030 (Jun. 1, 2016 Letter Order).

[57] *See, e.g.*, JA 1004--22 (Transcript of Attorney Discussion); *See Coins*, ECF Nos. 69--71 (parties' correspondence with court regarding discovery dispute).

[58] JA 1030 (Jun. 1, 2016 Letter Order).

[59] *Id.*

After the parties filed summary judgment motions, the government began the process of releasing seven of the coins, numbered 7 through 11 and 14 through 15, to the Guild.[60]  At approximately 10:30am on the morning of March 31, 2017, the Guild took possession of these seven coins from Customs.[61]  The parties did not immediately notify the court of this change of possession.[62]  The fifteen coins that still remained in the government's possession after this point are the subject of this appeal and are referred to in this brief as "the coins," "the disputed coins," or "the defendant property."

**F.  THE DISTRICT COURT APPLIED THE BURDEN OF PROOF-SHIFTING FRAMEWORK SET FORTH BY THIS COURT AND OTHERS IN CPIA CASES AND FOUND THAT THE GOVERNMENT ESTABLISHED A PRIMA FACIE CASE, GIVEN THE GUILD'S CONCESSIONS, AND THAT THE GUILD COULD NOT ESTABLISH A VALID DEFENSE TO FORFEITURE.**

Some time on March 31, 2017, the district court filed a memorandum and order on the parties' motions for summary judgment, although the parties did not receive electronic notification of the filing until April 3, 2017.  The court granted the

---

[60] JA 1395 (Joint status report regarding release of coins).

[61] *Id.*

[62] *Id.* at 1395--96.

government's motion for summary judgment as to the fifteen coins remaining in government possession.[63]

The district court first determined that the government satisfied its initial burden to show that the coins had been "listed in accordance with section 2604."[64] Noting that "it is perfectly proper . . . for the regulations to list restricted material 'by type or other appropriate classification,'" the district court explained that the government met its burden by showing the coins at issue fell "into the 'type or other classification' of material included in the designated list."[65]  The court cited to the Guild's own admissions that the coins appeared on the designated list as sufficient evidence to meet the government's initial burden.[66]

The court then shifted the burden to the Guild "'to establish, by a preponderance of the evidence, that the property is not subject to forfeiture, or to establish an applicable affirmative defense.'"[67]  The court identified the scholarly

---

[63] The court granted summary judgment for the Guild as to the seven coins the government returned, although it is unclear as to whether summary judgment was granted as to these coins before or after the coins were actually returned.  Judge Blake was not aware that the coins had been returned at the time she filed her opinion.

[64] JA 1377--78 (Mar. 31, 2017 Mem. Op.).

[65] *Id.* at 1377.

[66] *Id.* at 1378.

[67] *Id.* at 1380 (citing *United States v. Eighteenth Century Peruvian Oil on Canvas*

-24-

evidence offered by the Guild's experts, Douglas Mudd and Michael McCullough, as the Guild's only proof under 19 U.S.C. § 2606 that the coins were exported prior to the effectuation of CPIA restrictions, or that the coins were exported lawfully while CPIA restrictions were in effect.[68]

The Court rejected the testimony of both experts, finding that both of their opinions boiled down to the conclusion that the coins did not belong on the designated lists at all---a foreclosed challenge to the validity of the regulations and the lists.[69]

The court concluded its opinion with a five-page analysis of the Guild's due process and fair notice arguments. In rejecting these arguments, the court declined the Guild's invitation to "rewrite the statute" by "impos[ing] a burden on the government that the CPIA does not: the requirement to prove, as part of its initial showing, that the decisions incorporated into its underlying regulations are sound."[70]

---

*Painting of Doble Trinidad*, 597 F. Supp. 2d 618, 623 (E.D. Va. 2009)).

[68] *Id.* at 1382, 1389.

[69] *Id.* at 1384 (discussing Mudd), 1387 (discussing McCullough).

[70] JA 1391 (citing *ACCG*, 698 F.3d at 182 ("According to the Guild, the government and the district court effectively read the 'first discovered' requirement out of the statute. We are not persuaded.")).

-25-

Because the Guild "provided no other evidence or argument" to meet their burden under the burden-shifting framework, the court determined that the Guild did not establish an exception to forfeiture and granted summary judgment for the government.[71]

## IV.   SUMMARY OF ARGUMENT

The main question for this Court is whether its 2012 opinion foreclosed further challenges to the underlying validity of the CPIA and the designated lists. The Guild's claims of error stem from the district court's decision to litigate a standard-issue asset forfeiture proceeding rather than to relitigate the same arguments regarding the legitimacy of the regulations that already failed in 2012. The district court correctly prevented the Guild from turning this asset forfeiture proceeding into yet another challenge to the CPIA and its implementing regulations and this Court should uphold its decision.

First, the district court correctly interpreted the Fourth Circuit's 2012 opinion. This Court made clear holdings on the following key issues: 1) the Court would not upset the decision-making of the legislative branch by invalidating the CPIA or the designated lists; 2) the government was not required at the outset to prove the "first

---

[71] JA 1389, 1393.

discovered" location for each coin; 3) the relevant export for questions of export status was the original export of the coins from either China or Cyprus; 4) the designated lists provide fair notice to importers of the material subject to regulation; and 5) the Guild's challenge to the forfeiture of the coins must be particularized. The district court followed this precedent in preventing the Guild from relitigating the underlying validity of the CPIA and the designated lists.

Second, the district court did not abuse its discretion in managing discovery when it prevented the Guild from taking discovery into foreclosed issues, including the "first discovery" and "export control" topics. The court correctly prevented the Guild from receiving discovery about the drafting and meaning of the CPIA and its implementing regulations, which would only have been relevant to a foreclosed challenge to the legitimacy of the regulations.

Third, the district court correctly granted summary judgment for the government. Using the burden-shifting framework that this Court set forth, the government met its initial burden to show entitlement to forfeiture. The Guild conceded that the disputed coins all appear on the designated list of items subject to forfeiture and the Fourth Circuit held in 2012 that the coins were lawfully listed. With that, the burden shifted to the Guild. The Guild failed to establish a defense or exception to forfeiture. Rather than offer particularized evidence about the 15 disputed coins, the Guild stuck with its plan to challenge the underlying validity of

-27-

the regulations and designated lists, offering expert testimony to show that none of the disputed coins should have ever appeared on the designated list in the first place. This argument asks the courts to second-guess the legislative, diplomatic, and policy determinations that went into the creation of the designated lists. The Fourth Circuit refused to do that in 2012, the district court refused to do it in 2017, and this Court should make the same refusal now.

The Guild's remaining arguments do not carry the day. Those arguments not falling under the umbrella of an issue already discussed are the Guild's claims that: 1) the district court violated the Guild's due process rights in striking its amended answer; 2) the regulations fail to provide importers with fair notice of prohibited conduct; and 3) the courts ignored alleged evidence of bad faith in the implementation of the regulations.

First, the district court acted within its discretion when it struck the Guild's amended answer. Federal Rule of Civil Procedure 12(f) allows courts to strike pleadings where they contain irrelevant or immaterial matter. The Guild's amended answer contained numerous salacious allegations relating to the illegitimacy of the designated list and the CPIA, a line of argument that the Fourth Circuit foreclosed in 2012. It also advanced a number of defenses that this Court's previous opinion also disposed of.

Second, the Fourth Circuit already determined that the regulations provide importers with fair notice.  Moreover, reading the statutory text as a whole demonstrates no confusion regarding the restrictive language, and indeed the Guild had no problem interpreting and applying the regulations in order to select coins for this test case.

Finally, the Guild repeatedly raised the same allegations of bad faith in the previous DJ action as it alleges were ignored in this action.  The Fourth Circuit already considered and rejected the Guild's allegations in the DJ action and it should do the same here.

The Fourth Circuit's opinion foreclosed further challenge to the validity of the CPIA and the designated lists.  The district court correctly applied those holdings to this asset forfeiture case.  In light of the Guild's failure to present valid evidence in defense of forfeiture, the district court correctly granted summary judgment.  Its holding should be affirmed.

## V.    <u>ARGUMENT</u>

### A.    THE DISTRICT COURT CORRECTLY READ THE FOURTH CIRCUIT'S OPINION AS FORECLOSING FURTHER CHALLENGE TO THE CPIA AND THE DESIGNATED LISTS.

The Fourth Circuit's 2012 opinion established the legitimacy of the CPIA and the designated lists.  This Court's binding precedent foreclosed further challenge to the validity of both in the asset forfeiture proceeding to follow, which would instead

-29-

allow a "particularized challenge" to the forfeiture of the specific coins in question.[72]
As set forth below, the district court read the plain language of the Fourth Circuit's
opinion correctly in holding that the Guild could no longer wage war on the CPIA
or the designated lists.

First, this Court's 2012 opinion considered and rejected the Guild's challenges
to the legitimacy of the CPIA and the designated lists.  On appeal in the DJ Action,
the Court declined "to engage in a searching review of the State Department's
conclusions" underlying the CPIA, despite the Guild's claims of irregularity and
illegitimacy in the implementation of the regulations.[73]  In so doing, this Court noted
the "deference owed to the political branches under the [CPIA]" and the
disinclination to "second-guess the Executive Branch in its negotiations with other
nations over matters of great importance to their cultural heritage."[74]  The Fourth
Circuit held that "a searching substantive review" of the legitimacy of the CPIA
"would be singularly inappropriate in this forum" and the court declined to conduct
such a review.[75]  Hewing closely to this holding, the district court refused to allow

---

[72] *ACCG*, 698 F.3d at 185.

[73] *Id.* at 179, 181.

[74] *Id.* at 179.

[75] *Id.* at 179, 181.

-30-

this asset forfeiture proceeding to become another protracted challenge to the underlying regulations, determining that the Fourth Circuit's 2012 opinion "forecloses any further challenge to the validity of the regulations."[76]

Second, the Fourth Circuit's opinion held that the government could identify coins on designated lists by "type or other appropriate classification" without "impos[ing] restrictions on a coin-by-coin" basis.[77]  The court rejected the Guild's argument that a coin could not be restricted unless the government could prove that it was "first discovered within China or Cyprus," noting that the CPIA imposes no such requirement and that imposing one "would make the statutory scheme utterly unworkable in practice."[78]  Instead, the Fourth Circuit noted, the CPIA "expressly places the burden on importers to prove that [unprovenanced items] are importable."[79]  The district court echoed this holding in its 2014 memorandum opinion, hold that the government is not required to prove in its prima facie case "that the coins were 'first discovered within' . . . either Cyprus or China."[80]  Rather,

---

[76] JA 105 (Jun. 3, 2014 Mem. Op.).

[77] ACCG, 698 F.3d at 182.

[78] *Id.* at 181--82 (internal quotations removed).

[79] *Id.* at 182 (quoting *ACCG* DJ, 801 F. Supp. 2d at 408).

[80] JA 106 (Jun. 3, 2014 Mem. Op.) (quoting Guild's Surreply, ECF No. 18, at 1--2).

the district court followed the Fourth Circuit in holding that the burden of demonstrating the origin of unprovenanced items appearing on the designated list fell to the importer.[81]

Third, the Fourth Circuit refused to disturb the State Department's determination that the coins belonged on the designated lists for Cyprus and China.[82] This Court determined that the government listed the coins lawfully under the CPIA.[83]  But in this asset forfeiture proceeding, the Guild still attempted to challenge the threshold question of whether the coins were "subject to export control by" Cyprus by pointing to E.U., U.K., and Cypriot laws.[84]  The district court's summary judgment opinion recognized this as a challenge to the coins' overarching designation on the lists; by arguing that the type and category of coin at issue was not subject to China's or Cyprus's export control, the Guild effectively argued that the coins "should [not] have been included in the designated lists in the first place."[85] The Fourth Circuit made clear that it would not disturb the State Department's

---

[81] *Id.* at 105--06 (quoting burden of proof language in ACCG, 698 F.3d at 183).

[82] *ACCG*, 698 F.3d at 179, 181.

[83] *Id.* at 183 (CBP has listed the Chinese and Cypriot coins by type, in accordance with 19 U.S.C. § 2604").

[84] *See* JA 1387 (Mar. 31, 2017 Mem. Op.) (referencing Guild arguments).

[85] *Id.*

designation of the coins on the list[86] and the district court followed this guidance in its June 2014 and March 2017 memorandum opinions by foreclosing arguments about export control.[87]

In sum, the district court correctly applied the clear language of the Fourth Circuit's opinion to exclude discrete issues from the asset forfeiture proceeding that had been foreclosed by this Court's 2012 opinion.

### B. THE DISTRICT COURT PROPERLY DISALLOWED DISCOVERY INTO FORECLOSED ISSUES, INCLUDING THE UNDERLYING LEGITIMACY OF THE CPIA AND THE VALIDITY OF THE DESIGNATED LISTS.

The district court did not abuse its discretion when it prevented the Guild from obtaining discovery into areas the Fourth Circuit's 2012 opinion foreclosed. The six most notable areas into which the court denied the Guild discovery were: 1) the drafting of the CPIA; 2) the development of the designated lists; 3) the coins' circulation patterns; 4) the government's proof of the coins' "first discovery" location; 5) the export control status of the coins under Cypriot and Chinese law; and 6) the government's legal positions in the litigation. The first two issues attempt to relitigate the validity of the CPIA and the designated lists --- a course of action the Fourth Circuit foreclosed in its 2012 opinion. The third, fourth, and fifth issues

---

[86] *ACCG*, 698 F.3d at 179, 181.

[87] JA 105-06 (Jun. 3, 2014 Mem. Op.); JA 1387 (Mar. 31, 2017 Mem. Op.).

attempt to challenge the placement of the defendant property on the designated lists. The sixth issue amounts to legal discovery to which the Guild is not entitled.

This Court reviews the district court's evidentiary decisions under the highly deferential "abuse of discretion" standard.[88]  A district court is given "wide latitude in controlling discovery" and its discovery rulings "will not be overturned" unless its abuse of discretion is "clear."[89]  This standard is so deferential that even in cases where the Fourth Circuit has disagreed with the trial judge and found the excluded evidence to be relevant, this Court has still refused to disturb the district court's discovery rulings.[90]

### 1. The district court acted within its discretion when it denied discovery into topics relating to the underlying legitimacy of the CPIA and the designated lists, their drafting, and their development.

The Guild already challenged the validity of the regulations in its DJ Action and lost.[91]  The Fourth Circuit held that "a searching review of the State

---

[88] *See, e.g.*, *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003).

[89] *Rowland*, 340 F.3d at 195.

[90] *See, e.g.*, *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 172--73 (4th Cir. 2014) (upholding district court ruling despite disagreeing with district court's assessment of the discovery's relevance, finding that "the discovery denial was sufficiently justified by the court's determination that the production would have been unduly burdensome").

[91] *See, e.g.*, ACCG, 698 F.3d at 181.

Department's conclusions" underlying the CPIA and the designated lists was inappropriate given the "traditional competencies and constitutional allocations of authority" inherent in the CPIA's statutory scheme.[92]  This Court flatly rejected the Guild's claims that the State Department and CBP imposed import restrictions on Chinese and Cypriot coins in violation of the CPIA.[93]  The Fourth Circuit also upheld the descriptions of the coins set forth in the designated lists, holding that the Chinese and Cypriot coins were listed "in accordance with 19 U.S.C. § 2604,"[94] which requires items to be listed in a "sufficiently specific and precise" way to ensure narrow application and fair notice to importers.[95]

Given the Fourth Circuit's holdings, the district court justifiably narrowed the issues to the forfeitability of the defendant property rather than the validity of the CPIA and the designated lists.  The Court informed the Guild at the outset of the case that it would not consider "any further challenge to the validity of the regulations" in light of the Fourth Circuit's opinion foreclosing such arguments.[96]

---

[92] ACCG, 698 F.3d at 179, 181.

[93] ACCG, 698 F.3d at 180--81.

[94] ACCG, 698 F.3d at 183.

[95] 19 U.S.C. § 2604.

[96] JA 105 (Jun. 3, 2014 Mem. Op.).

In its later motion denying the Guild's requested discovery, the district court repeated this point, noting that the Guild's requested discovery was "not relevant to the issues the court will have to decide in this forfeiture action."[97]  The district court's denial of discovery into the drafting of the CPIA and the designated lists was consistent with the Federal Rules of Civil Procedure since such information was not relevant to "the issues at stake in the action" and therefore not discoverable.[98] Further, even if the discovery was relevant, the court's denial of discovery into the drafting and meaning of the CPIA and the designated lists is consistent with its broad discretion to limit discovery where, according to the Federal Rules, its "burden or expense . . . outweighs its likely benefit."[99]

Given the Fourth Circuit's instruction that the judiciary should not intervene in the delicate balance of diplomatic considerations underlying the regulations, it was not an abuse of discretion for the district court to determine that the benefits of any discovery relating to the validity of the CPIA and the designated lists were outweighed by the burden of obtaining such discovery, especially after both courts already considered those arguments in the earlier DJ action.[100]

---

[97] JA 486 (Feb. 11, 2016 Mem. and Order).

[98] Fed. R. Civ. P. 26(b)(1) (defining scope of discovery).

[99] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[100] *See Id.* (permitting courts to limit discovery on their own initiative where burden

### 2. The court's decision to deny discovery related to the coins' placement on the designated lists was within its discretion.

The court did not abuse its discretion when it denied the Guild discovery into topics related to the coins' circulation patterns, the government's proof of the coins' "first discovery" locations, and the government's knowledge of the export control status of the coins under Chinese and Cypriot law. These topics relate to the Guild's argument that the defendant property does not belong on the designated lists at all --- an argument made irrelevant by the Fourth Circuit's opinion foreclosing such a challenge.

### a. *Coin circulation patterns*

The Guild sought discovery into the coins' circulation patterns in an attempt to bolster their coin circulation expert Mr. Mudd's opinion that "the mass circulation of ancient Cypriot and Chinese coins" makes it "impossible to assert" that coins such as the defendant property should be subject to import regulations at all.[101] Mr. Mudd admitted as much, noting that the discovery about coin circulation was intended to supplement his expert report.[102] As counsel for the Guild noted in the February 2016

---

"outweighs its likely benefit").

[101] JA 1040 (Mudd Opinion). *See* Section V.C.2, *infra*, for a full discussion of Mr. Mudd's proposed testimony.

[102] JA 1035 at ¶ 2 (Mudd Declaration).

-37-

hearing on the parties' discovery motions, the Guild sought discovery into coin circulation patterns in order to show that the defendant property was "of a sort" that, in general, "circulated in significant numbers outside of China or Cyprus."[103]  These circulation patterns would have ultimately challenged the coins' placement on the designated lists at all, as the Guild's argument was that the type of coin at issue "cannot be assumed [to have] . . . left Cyprus or China after the date restrictions were imposed" and were "a type that circulated far from the countries of origin."[104]

The district court did not abuse its discretion in determining that the Fourth Circuit's opinion foreclosed discovery into the general circulation patterns of the types of coins on the designated list.  The Fourth Circuit validated the government's ability to list coins by type and category.[105]  The Fourth Circuit also refused to upset the underlying determinations of what coins were subject to regulation.[106]  Given this, the district court did not clearly err in denying discovery into coin circulation, insofar as that discovery would have been used to show that the defendant property should never have been placed on the designated lists at all.

---

[103] JA 766 (Feb. 5 Hearing Transcript).

[104] *Id.* at 766, 767.

[105] *ACCG*, 698 F.3d at 182.

[106] *Id.* at 181.

### b.    *"First discovered within"*

The court's denial of the Guild's discovery requests relating to the government's proof of first discovery location was not an abuse of discretion given the Fourth Circuit's 2012 opinion, which clarified the government's burden of proof. The Fourth Circuit held that the government was not required to prove location of first discovery for coins with undocumented provenance like those at issue here. Rather, "the statute expressly places the burden on importers to prove that they are importable."[107]    The district court did not clearly err when it cited the Fourth Circuit's foreclosure of the "first discovered within" challenge as justification for its decision to deny discovery.[108]    This Court should not disturb that ruling.

### c.    *Export control status*

Similarly, the district court acted within its discretion when it denied discovery into topics related to whether the coins were subject to export control under U.K. and E.U. law.  In the February 2016 hearing on the parties' discovery motions, the court characterized the Guild's "export control" argument as asking the court to "decide whether another country's law essentially means that the export was

---

[107] *Id.* at 182 (internal quotations omitted).

[108] JA 486--87 (Feb. 11, 2016 Mem. and Order).

lawful despite the fact that the Government put these coins on the [designated] list."[109]  The Guild agreed with that characterization.[110]

Not only did this argument amount to a foreclosed challenge to the designated lists, but it was also irrelevant to an issue the court would need to decide to determine eligibility for forfeiture.  As the Court noted, "[i]t is unlikely that the export control status of the coins under foreign law will be a proper defense in this forfeiture action,"[111] given that neither China nor Cyprus were "willing to provide documentation that these [coins] were lawfully exported" pursuant to 19 U.S.C. § 2606.[112]  The Court acted within its discretion by denying discovery that would have been irrelevant under Rule 26(b).  Moreover, as the court noted in its opinion on the discovery motions, the Guild did not need the discovery it sought in order to make its legal arguments regarding the export control status of the coins.[113]  The court's decision is consistent with Rule 26(b)(2)'s limitations on discovery, which require a

---

[109] JA 769 (Feb. 5 Hearing Transcript).

[110] *Id.* at 169--70.

[111] JA 486 (Feb. 11, 2016 Mem. and Order).

[112] JA 769 (Feb. 6, 2016 Hearing Transcript).

[113] JA 486 (Feb. 11, 2016 Mem. and Order).

court to limit discovery where "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive."[114]

The district court's denial of discovery was justified by the Fourth Circuit's opinion holding that the coins were placed on the designated lists pursuant to the CPIA and that the court would not interfere in State's and CBP's determination to impose import restrictions.[115]  Further challenge to the designated lists was foreclosed and the district court acted within its discretion when it denied discovery challenging the coins' placement on the lists.

### 3. The court did not abuse its discretion when it denied the Guild legal discovery.

The court determined that the Guild's remaining disputed discovery topics fell into the category of discovery about the government's legal positions, which is not properly discoverable.[116]  Federal Rule of Civil Procedure 26(b)(3)(B) protects from disclosure "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  The Fourth

---

[114] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[115] *ACCG*, 698 F.3d at 179, 181, 183.

[116] JA 486 (Feb. 11, 2016 Mem. and Order) (discovery sought from State Department witnesses "is not so much factual as legal"); JA 1030 (June 1, 2016 Letter Order) ("The Guild primarily seeks information concerning the government's legal positions, which is generally beyond the scope of a proper 30(b)(6) deposition.").

Circuit has held that "opinion work product material," including material containing legal theories, "is immune from discovery."[117]  District courts in Maryland have held the same, granting protective orders where the discovery sought "does not ask for the underlying facts, but . . . counsel's interpretation of the facts and how they have chosen to proceed in preparing their case."[118]

The Guild's denied discovery impermissibly sought the legal impressions of counsel.  In the February 2016 hearing regarding the parties discovery motions, counsel for the Guild admitted that its interest in obtaining interrogatories and deposing state department officials regarding the export control issue was that it wanted to know the government's legal position as to the applicable export control

---

[117] *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 732 (4th Cir. 1974), *cert. denied*, 420 U.S. 997 (1975) ("We hold that such opinion work product material, as distinguished from material not containing mental impressions, conclusions, opinions, or legal theories, is immune from discovery although the litigation in which it was developed has been terminated.").

[118] *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. WMN-08-CV-984, 2010 WL 2572809, at *5 (D. Md. June 22, 2010).  *See also*, *e.g.*, *Fish v. Air & Liquid Sys. Corp.*, No. GLR-16-496, 2017 WL 697663, at *21 (D. Md. Feb. 21, 2017) ("Plaintiffs' AOI are not asking for clarification of this factual data, but rather for how Ford's counsel has marshalled the facts learned during its investigation in support of its case."); *S.E.C. v. SBM Inv. Certificates, Inc.*, No. DKC-2006-0866, 2007 WL 609888, at *24 (D. Md. Feb. 23, 2007) (granting protective order where disputed topics "would require investigating attorneys' thought processes and opinions" and would require disclosure of legal strategies).

law.[119] The district court determined that even if export control status was a relevant issue, the Guild could make its legal arguments regarding export control without deposing State Department officials.[120] This fell within the court's discretion and is consistent with Rule 26(b), which requires a court to limit discovery where the discovery is not relevant to a party's claim or defense[121] or "is unreasonably cumulative or duplicative."[122]

The same problem arose during the Guild's deposition of the government's 30(b)(6) witness, Carlly Luckman, the Assistant Director of Field Operations for Trade at CBP's Baltimore Field Office, who had extensive experience in seizures and forfeitures.[123] The Guild wanted, in pertinent part, "further elaboration of the government's position" as to legal issues such as foreign export control, the government's legal opinion about the Guild's expert reports, and "the government's

---

[119] JA 770 (Feb. 5, 2016 Hearing Transcript) ("We don't know what the government's position is. That's part of the problem, we'd like to know at least. I mean, is the Government going to say EU law does not apply? It may, let's find out.").

[120] JA 486 (Feb. 11, 2016 Mem. and Order).

[121] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[122] Fed. R. Civ. P. 26(b)(2)(C)(i).

[123] JA 813--15 (Luckman Deposition Transcript) (describing professional background and experience with CBP).

views as to certain aspects" of the court opinions issued in the DJ Action.[124]  Indeed, counsel for the Guild repeatedly asked Ms. Luckman whether she was a lawyer in the midst of asking for CBP's legal position on various aspects of the case.[125]  In a letter order denying this legal discovery to the Guild, the district court determined that the Guild was not permitted to obtain discovery into the government's legal positions and theories.[126]  This decision is in line with case law from the Fourth Circuit and the District of Maryland that prohibits discovery into a party's legal positions and strategies.[127]  The court further noted that the Guild had already obtained "factual information concerning the basis for seizure and detention" in the depositions of other CBP witnesses,[128] consistent with the court's obligation to limit discovery where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."[129]

---

[124]  JA 1007--09 (Transcript of Attorney Conversation following Luckman Deposition).  *See also*, JA 929--54 (Luckman Deposition Transcript) (questioning witness regarding government's legal theories).

[125]  JA 951, 952 (Luckman Deposition Transcript).

[126]  JA 1030 (June 1, 2016 Letter Order).

[127]  *See* note 118, *supra*, and text accompanying (collecting cases).

[128]  JA 1030 (June 1, 2016 Letter Order).

[129]  Fed. R. Civ. P. 26(b)(2)(C)(ii).

District courts have "wide latitude in controlling discovery."[130]   Here, the district court did not abuse its discretion when it prevented the Guild from taking discovery into foreclosed issues and the government's legal positions.

### C.   THE GOVERNMENT MET ITS BURDEN OF PROOF AND THE GUILD FAILED TO REBUT, ENTITLING THE GOVERNMENT TO SUMMARY JUDGMENT.

The burden-shifting scheme in asset forfeiture proceedings under the CPIA is a well-established blueprint.   The district court followed this blueprint when it determined both that the government met its initial burden of proof and that the Guild failed to meet its burden to establish an exception or defense to forfeiture.   The court's ruling on summary judgment should be upheld for the following reasons:  the court identified and applied the correct burden-shifting framework; the Guild conceded the elements of the Government's prima facie case; and the Guild failed to establish a valid defense or exception to forfeiture.

### 1.    The Government met its prima facie case for forfeiture.

In an effort to focus its test case on the issues it cares about---the legitimacy and validity of the CPIA and the designated lists---the Guild conceded the government's prima facie case for forfeiture under the CPIA.

---

[130] *Rowland*, 340 F.3d at 195.

-45-

The Fourth Circuit is one of several courts to have outlined the CPIA's burden-shifting framework in an asset forfeiture proceeding. This Court's 2012 opinion explained the two-step burden-shifting scheme under the CPIA:

- **First, the government has the initial burden to show that the coins were "listed in accordance with section 2604."**[131] This only requires a showing that the defendant property was "listed 'by type or other appropriate classification' in a manner that gives 'fair notice . . . to importers.'"[132]

- **Once this initial burden is met, the burden shifts to the claimant to establish a defense or exception to forfeiture.**[133] A claimant shows an exception where there is either a "certificate or other documentation of the State Party" certifying that the property was exported illegally, or where the claimant presents "satisfactory evidence" that the material left the state party ten years or more past, or on or before the date the material became designated.[134] Of note, the parties in this case disputed

---

[131] 19 U.S.C. § 2610. *See also*, *ACCG*, 698 F.3d at 185 (outlining burden-shifting structure).

[132] *ACCG*, 698 F.3d at 185 (quoting 19 U.S.C. § 2604).

[133] *Id.* at 185.

[134] 19 U.S.C. § 2606(b).

whether a claimant could meet its burden using scholarly or other expert evidence, or whether the CPIA required the kind of "satisfactory evidence" outlined in 19 U.S.C. § 2606(c). That distinction is ultimately irrelevant here. Even if expert testimony is typically allowed, the only expert testimony the Guild presented is aimed at undermining the validity of the CPIA and the designated lists and would not be admissible anyway.

As the district court noted,[135] this burden-shifting scheme is consistent with district court decisions in the Eastern District of Virginia[136] and the Southern District of New York[137] applying the CPIA. The Guild does not appear to dispute the applicable burden-shifting scheme, although it does take issue with the district court's determination that the Government established a prima facie case for forfeiture.

---

[135] JA 1375--76 (Mar. 31, 2017 Mem. Op.) (discussing burden shifting framework).

[136] *Peruvian Oil*, 597 F. Supp. 2d at 622 ("Reading these two provisions together, it thus appears that 19 U.S.C. § 2610 places the initial burden on the Government to show that CPIA applies. After that is accomplished, 19 U.S.C. § 1615 places the burden of proof in the remainder of the action on the claimant.")

[137] *United States v. An Original Manuscript Dated Nov. 19, 1778*, No. 96 CIV. 6221, 1999 WL 97894, at *4 (S.D.N.Y. Feb. 22, 1999) ("[I]n distinguishing a section 2610 forfeiture from the normal Customs procedures under 1615, Congress plainly directs the court to treat a CPIA forfeiture as any other forfeiture except that the burden of proof is initially on the government, not on the claimant.")

-47-

But the government did meet its initial burden to show that the defendant property was "listed in accordance with Section 2604."[138]  The Fourth Circuit held that the listings of the Chinese and Cypriot coins of the same type as the defendant property was done "in accordance with 19 U.S.C. § 2604."[139]  All that remained for the government to prove was that the specific coins at issue were of the same type as appeared on the designated list.[140]  The Guild conceded this fact, admitting that the coins at issue do appear on the designated lists for Cyprus and China.[141]  Moreover, the invoice that shipped with the coins identified the coins as appearing on the designated list and the Guild agreed that the invoice accurately described the coins.[142]

The Guild argues that the government must prove as part of its prima facie case that the coins at issue were "first discovered within" China or Cyprus and that

---

[138] *ACCG*, 698 F.3d at 183.

[139] *Id.* at 183.

[140] JA 1377 (Mar. 31, 2017 Mem. Op.) ("The only issue, then, is whether each of the 22 coins falls into the type or other classification of material included in the designated lists." (internal quotations omitted)).

[141] JA 1162 (Guild response to government request for admission) JA 1378 (Mar. 31, 2017 Mem. Op.) (discussing Guild concession).

[142] JA 1037 (Spink Invoice); JA 1377--78 (Mar. 31, 2017 Mem. Op.) (discussing Spink invoice); JA 1162 (Guild response to government request for admission).

they were "subject to export control" by those countries. As discussed more fully in Section V.A, above, this argument is inconsistent with the Fourth Circuit's 2012 opinion and the requirements of the CPIA.

Based on the statutory requirements, the undisputed evidence and the Guild's own concessions, the government established a prima facie case for forfeiture as to the coins at issue on appeal.

### 2. Once the burden shifted to the Guild, the Guild failed to establish a valid exception or defense to forfeiture under the CPIA.

The Guild chose to mount its defense to forfeiture not with admissible evidence, but by relitigating foreclosed issues relating to the invalidity of the underlying regulations and the designated lists. The Guild failed to dispute the government's entitlement to summary judgment with admissible evidence.

The Guild conceded in the DJ action that it "has no knowledge where or when the collectors' coins were found."[143] The Guild's defense to forfeiture did not pertain to the specific import or export history of the defendant property. Rather, it consisted of expert testimony from two proposed expert witnesses---Douglas Mudd, a coin circulation expert, and Michael McCullough, a lawyer.[144] Both experts

---

[143] JA 1116 (DJ Complaint).

[144] JA 1389 (Mar. 31, 2017 Mem. Op.) (summarizing expert testimony and noting lack of other evidence in defense to forfeiture).

offered testimony that delegitimized the designated lists without providing the proof necessary under the statute.

This Court evaluates grants of summary judgment *de novo*, but reviews a district court's determination as to the irrelevance and inadmissibility of the Guild's expert witness evidence for abuse of discretion.[145]  *Daubert v. Dow* sets forth the criteria for determining the admissibility of expert opinions.[146]   According to *Daubert*, expert testimony is not admissible under Federal Rule of Evidence 702 unless it "fits" the factual dispute to be resolved.[147]  In other words, expert testimony may only be admitted where it has "a valid scientific connection to the pertinent inquiry."[148]  The Fourth Circuit has followed *Daubert*'s "fit" requirement, excluding

---

[145] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (holding that challenges to a court's decision to admit or exclude expert testimony are reviewed under the deferential abuse of discretion standard); *Sherman v. Westinghouse Savannah River Co.*, 263 F. App'x 357, 368 (4th Cir. 2008) (applying abuse of discretion standard to decision to admit or exclude expert testimony); *Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 182 Fed. App'x 267, 272 (4th Cir. 2006) (same).

Note that even if a *de novo* standard of review applies to the district court's entire analysis, the Guild's expert testimony still contradicts the Fourth Circuit's 2012 opinion such that the discounting of the testimony is warranted under a *de novo* standard as well.

[146] *Daubert v. Merill Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[147] *Id.* at 591--92.

[148] *Id.* at 591--92.

expert testimony where the expert's scientific analysis did not account for "the limited issue in the case."[149]

> ### a. Douglas Mudd's testimony regarding general coin circulation patterns was insufficiently particularized and contradicted the CPIA.

The district court did not abuse its discretion when it determined that Mr. Mudd's testimony was not sufficiently particularized to establish an exception to forfeiture. Such general expert testimony is inconsistent with judicial interpretation of CPIA cases and runs contrary to the statutory language.

Courts in CPIA cases have allowed expert testimony where it is sufficiently particularized to the defendant property. For example, in *United States v. One Tyrannosaurus Bataar Skeleton* in the Southern District of New York, paleontologists opined on "the distinctive coloring of the Defendant [tyrannosaurus skeleton]" which made it possible to distinguish the skeleton at issue "from fossils from equivalent age in neighboring countries" and determine its site of excavation.[150]

---

[149] *Pharmanetics,* 182 Fed. App'x at 272 (4th Cir. 2006) (excluding expert testimony regarding disparate radiation exposure in case involving disparate impact of management directives where analysis of radiation exposure did not take management directives into account).

[150] No. 12 Civ. 4760, 2012 WL 5834899, at *2 (S.D.N.Y. Nov. 14, 2012) (internal quotations omitted).

Contrast the specific analysis accepted in *Tyrannosaurus* with the more general proof rejected in the Puerto Rican case of *United States v. 323 Quintales of Green Coffee Beans.*[151]  There, the District of Puerto Rico held that a claimant did not establish an exception to forfeiture where he offered no proof as to the specific country of origin of the coffee beans to be forfeited, but rather argued that because he purchased the beans through a middleman, "it is impossible for him to determine from where the coffee originated."[152]  The court found this uncertainty "insufficient to create a genuine issue of material fact" as to the coffee's country of origin.[153]

Mr. Mudd's testimony is in line with the excluded testimony in *Coffee Beans*, not the specific testimony admitted in *Tyrannosaurus*.  Rather than tracing the specific origin of the coins as did the expert in *Tyrannosaurus*, Mr. Mudd opines that coins of the same type as the defendant property circulated widely enough that "it is impossible to assert that all such coins without provenance should be regarded as illegally exported cultural property."[154]  This "it's impossible to say" defense did

---

[151] 21 F. Supp. 3d 122, 136 (D.P.R. 2013).

[152] *Id*.

[153] *Id.*

[154] JA 1040 (Mudd Report).

not hold enough water to brew a latte in *Green Coffee Beans*, and the district court was within its discretion in discounting it here as well.

Mr. Mudd's opinion regarding general coin circulation boils down to the conclusion that the type and category of coins at issue here should not appear on the designated list at all.[155]   As the district court noted, allowing generalized expert testimony about the type and category of regulated goods "runs contrary to the logic of the CPIA, which entrusts decisions about whether a certain type of material should be restricted to specific executive-branch officials."[156]   Allowing Mudd's generalized testimony about coin circulation, the district court observed, would force courts "to weigh the determinations implicit in the designated lists against testimony from claimants' experts regarding a particular type of restricted material."[157]   This is precisely the judicial intervention that the Fourth Circuit wanted to avoid in its 2012 opinion when it upheld the validity of the designated lists.[158]

---

[155] JA 1383--84 (Mar. 31, 2017 Mem. Op.).

[156] *Id.* at 1384.

[157] *Id.* at 1384.

[158] *ACCG*, 698 F.3d at 181 ("[T]raditional competencies and constitutional allocations of authority have counseled reluctance on the part of the judiciary to intervene."); *id.* at 182--83 (explaining validity of designating coins by type and classification and finding CBP's listing of the coins to be lawful under 19 U.S.C. § 2604).

Moreover, accepting expert testimony about the invalidity of the designated lists would "undermine the[ir] function," which is inconsistent with the statute itself.[159]  The CPIA limits the application of general forfeiture laws only "insofar as [they] are . . . not inconsistent" with the rest of the CPIA.[160]  Expert testimony that the types and categories of coins on the CPIA's designated lists for China and Cyprus were incorrectly designated undermine the provisions of the CPIA by definition.

The district court did not clearly err in finding Mudd's opinions to be insufficiently particularized to carry the Guild's burden on summary judgment.

> **b.    *The district court did not abuse its discretion when it found Michael McCullough's testimony about the export control laws of China and Cyprus irrelevant.***

The district court acted well within its discretion when it determined that Mr. McCullough's testimony about foreign export controls did not fit with the relevant issues to be decided in this case.[161]  As discussed above, expert testimony is only admissible where it has "a valid scientific connection to the pertinent inquiry."[162]

---

[159] JA 1384--85 (Mar. 31, 2017 Mem. Op.).

[160] 19 U.S.C. § 2609(a); JA 1384--85 (discussing § 2609(a)).

[161] JA 1385 (Mar. 31, 2017 Mem. Op.).

[162] *Daubert*, 509 U.S. at 591--92.

-54-

The foreign export control status of the coins is not connected to any pertinent inquiry in this asset forfeiture case.

Mr. McCullough's expert opinions are not based on a physical examination of the coins, but rather on an analysis of foreign export control laws.[163] His ultimate opinions about the Chinese coins are twofold:  first, that the Chinese coins could have been exported from either Hong Kong or China; and second, that either Hong Kong or Chinese law would allow the export of the coins.[164] Mr. McCullough's opinions as to the Cypriot coins are that EU and UK laws would have allowed the coins to be "exported from the UK and EU without an export license."[165]

The district court did not clearly err in holding that Mr. McCullough's opinions were not relevant evidence.[166] The court based its finding on a "multiple, independent reasons."[167] On the one hand, if the CPIA requires the Guild to produce a certificate or other documentation from China or Cyprus certifying the export was lawful, as 19 U.S.C. § 2606(a)-(b) suggests it does, then Mr. McCullough's

---

[163] JA 1056 (McCullough Expert Report).

[164] JA 1057--59 (McCullough Expert Report).

[165] JA 1067--68 (McCullough Expert Report).

[166] JA 1389 (Mar. 31, 2017 Mem. Op.).

[167] *Id.* at 1388, n.17.

-55-

testimony does not suffice.[168]  On the other hand, even if the Guild may establish lawfulness of the coins' export using any kind of evidence, Mr. McCullough's testimony is still irrelevant for three reasons.

First, Mr. McCullough opines that neither the Cypriot nor the Chinese are "subject to export control" by their respective state parties, which would mean that they would "not qualify for designation under § 2604" at all.[169]  As the district court summarized, "the Guild contests whether these types of coins should have been included in the designated list in the first place."[170]  As discussed in Sections 5.A and 5.B.2, above, the coins' placement on the designated list is not open for dispute in this forum.   This makes Mr. McCullough's testimony both irrelevant and excludable under 19 U.S.C. § 2609(a), which limits application of other forfeiture laws "insofar as such provisions of law are . . . not inconsistent with" the CPIA.

Second, the court found Mr. McCullough's testimony that the Cypriot coins could have been exported from the UK without an export license to be irrelevant. The court justified its finding using the statutory text[171] and the Fourth Circuit's 2012

---

[168] *Id.* at 1385--86 (discussing Cypriot coins); JA 1388--89 (discussing Chinese coins).

[169] *Id.* at 1387.

[170] *Id.* at 1387 (discussing Cypriot coins).  *C.f.*, JA 1388 (discussing Chinese coins).

[171] 19 U.S.C. § 2606(a) (prohibiting export of designated material "from the State Party after the designation of such material"); JA 1387 (Mar. 31, 2017 Mem. Op.)

opinion,[172] holding that the relevant export under the CPIA is the original export from the state party, Cyprus, not any subsequent exports from other countries. This was not clear error.

Third, Mr. McCullough's expert opinions regarding the Chinese coins was insufficiently particularized. He opined that the Chinese coins "could have been lawfully exported" from Hong Kong, and that his analysis applied "if they . . . were."[173] As the district court noted, McCullough offered "general conclusions that apply to an entire category of material . . . without providing any evidence that the coins at issue were of that type."[174] There was no "further link between the defendant property" and these conclusions, making his testimony "not sufficiently particular to rebut the government's prima facie case."[175]

Because the district court's multiple independent determinations as to the insufficiency of Mr. McCullough's testimony were justified by the record, the

---

(citing 19 U.S.C. § 2606(a)).

[172] *ACCG*, 698 F.3d at 176--77 (defining terms "State Party" and "respective state" as referring to "the country that has requested the import restrictions"); JA 1387 (discussing Fourth Circuit opinion).

[173] JA 1060 (McCullough Report); JA 1388 (Mar. 31, 2017 Mem. Op.) (discussing McCullough report).

[174] JA 1388 (Mar. 31, 2017 Mem. Op.).

[175] *Id.*

statute, and applicable precedent, the court's determination was not clearly erroneous.

### 3.    The government was entitled to summary judgment.

As discussed in the preceding sections, the government established a prima facie case for forfeiture.[176]  The Court did not abuse its discretion when it determined that the Guild's expert witness testimony was irrelevant to establish a defense to forfeiture.[177]  Because the Guild offered no valid evidence to defend against the forfeiture, summary judgment was appropriate.

### D.    THE FOURTH CIRCUIT HAS ALREADY CONSIDERED AND REJECTED THE MAJORITY OF THE GUILD'S REMAINING ARGUMENTS AND IT SHOULD DO SO AGAIN.

The Guild's discernible leftover assignments of error are:  1) the court violated the Guild's due process rights in striking its amended answer *sua sponte*;[178] 2) the regulations failed to provide fair notice of what coins would be subject to forfeiture;

---

[176] Section V.C.1, *supra*.

[177] Section V.C.2, *supra*.

[178] The Guild alleges that the District Court struck its amended answer *sua sponte*. Br. at 33.  In fact, the Court construed the government's motion to strike the original answer---filed ten days before the Guild's amended answer---as a motion to strike the amended answer.  JA 106 (Jun. 3, 2014 Mem. Op.).  The amended answer had many of the same flaws as the answer.  *See* JA 71--85 (redline comparing answer to amended answer).

3) the court's decision ignored previously unaddressed irregularities in the implementation of the CPIA, which supposedly undermine its validity.

These issues can and should be dispatched in short order.  First, courts have broad discretion to strike pleadings, either on a motion or *sua sponte*.  Second, the Fourth Circuit already determined that the CPIA and the designated lists provide fair notice to importers; indeed the Guild admitted that they consulted the regulations themselves in order to identify coins that would be subject to seizure.  Finally, the Guild raised largely the same supposed irregularities in the CPIA's implementation before both the district court and the Fourth Circuit repeatedly throughout its DJ Action.  Those issues were part of the record when the Fourth Circuit refused to second-guess the validity of the CPIA or the designated lists, both in its initial decision-making and in its denial of *en banc* review.

### 1.    The district court did not abuse its discretion when it struck the Guild's amended answer.

The district court acted within its broad discretion to control discovery and strike pleadings when it struck the Guild's amended answer.  Although the Fourth Circuit has not clearly ruled on the standard of review for a motion to strike, other circuit courts have applied an abuse of discretion standard, [179] noting that striking

---

[179] *See, e.g., Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133 (7th Cir. 2009) (applying abuse of discretion standard to district court's *sua sponte* decision to strike counterclaim); *Hatchett v. U.S.*, 330 F.3d 875, 887 (6th Cir. 2003)

pleadings is "inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions."[180]  The Fourth Circuit used abuse of discretion language in affirming a district court's decision to strike an affirmative defense in *Gilmore*, holding that the district court "did not err" in striking the pleading.[181]

Federal Rule of Civil Procedure 12(f) allows a district court to strike, upon motion by a party or *sua sponte*, "any redundant, immaterial, impertinent, or scandalous matter" from a pleading.  The Fourth Circuit has observed that "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted."[182]  Courts are permitted to strike claims or defenses where allowing them to proceed would "creat[e] the possibility that issues will be unnecessarily complicated."[183]

---

("We review the grant of a motion to strike a pleading for abuse of discretion.").

[180] *State Exchange Bank v. Hartline*, 693 F.2d 1350 (11th Cir. 1982) (applying abuse of discretion standard to evaluation of district court's decision to dismiss a claim, equating that power with "the power to strike a pleading," which "is inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions").

[181] *Gilmore*, 252 F.3d at 347.

[182] *Id.* (internal quotation omitted).

[183] *Preziosi v. United States*, No. CIV. RDB-11-02913, 2012 WL 2798771, at *5 (D. Md. July 9, 2012) (internal quotations omitted).

The district court did not clearly err when it struck the Guild's amended answer. The Guild's pleading contained numerous claims and defenses relating to the underlying validity of the CPIA and the designated lists that were foreclosed by the Fourth Circuit's 2012 opinion.[184] A non-exhaustive list of the claims and defenses in the Amended Answer that attempted to relitigate the legitimacy of the CPIA and the designated list are as follows:

- "The Guild submits that the plain meaning of the CPIA requires the Government to demonstrate that the defendant property was 'first discovered within' and 'subject to the export control' of either Cyprus or China."[185]

- "The Guild . . . denies the Government complied with significant procedural and substantive constraints found in the CPIA before entering into . . . agreements [to protect Cypriot and Chinese cultural heritage] or in promulgating the cited regulations imposing related import restrictions on designated cultural goods."[186]

- The state department "work[ed] in concert with members of the archaeological community ideologically opposed to private collecting [to] engineer[] the imposition of import restrictions."[187]

- "[T]hey [the State Department] willfully ignored scholarly evidence and the conclusions of the State Department's own Cultural Property Advisory Committee ("CPAC") that ancient coins from the Island nation of Cyprus travelled extensively in foreign trade such that it is impossible to assume

---

[184] *See* Section V.A., *supra*, for a full discussion of foreclosed issues.

[185] JA 44 (Amended Answer).

[186] *Id.* at 45.

[187] *Id.* at 49.

that such coins were "first discovered within" and "subject to the export control" of the modern nation state of Cyprus."[188]

- The CPIA's restrictions "cannot lawfully apply to the defendant property."[189]

In striking the amended answer in its June 2014 memorandum opinion, the district court observed that "much of the answer and most if not all of the affirmative defenses seek to relitigate issues concerning the validity of the regulations and the government's decision to impose import restrictions on certain Cypriot and Chinese coins."[190] The district court cited the Fourth Circuit's 2012 opinion in explaining why such arguments were foreclosed.[191] The district court did not abuse its discretion in striking the amended answer, which contained material that "might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action."[192]

### 2. The Fourth Circuit foreclosed the Guild's fair notice argument, which lacks logical sense anyway.

---

[188] *Id.* at 50.

[189] *Id.* at 50.

[190] JA 106 (June 3, 2014 Mem. Op.).

[191] JA 106 (June 3, 2014 Mem. Op.) (citing *ACCG*, 698 F.3d at 181--82). *See* Section V.A., *supra*, for a full discussion of foreclosed issues.

[192] *Gilmore*, 252 F.3d at 347 (internal quotation omitted).

The Guild's suggestion that the CPIA failed to provide fair notice of prohibited conduct fails for three reasons:  first, the Fourth Circuit held that the regulations did provide fair notice; second, the plain language of the statute is clear; and third, the Guild's plan for this very litigation demonstrates the clarity of the regulations.

First and likely dispositive of the issue, the Fourth Circuit's 2012 opinion established that the designated lists meet fair notice requirements.  This Court held that "CBP has listed the Chinese and Cypriot coins by type, in accordance with 19 U.S.C. § 2604."[193]  Section 2604 requires that designated lists "be sufficiently specific and precise to insure that . . . fair notice is given to importers and other persons as to what material is subject to such restrictions."[194]

Second, to the extent the Guild argues that the CPIA is unclear as to whether the government will be required to prove location of first discovery or export control status, the statutory language is clear on this distinction as well.  As the district court noted, "the provisions of the CPIA that govern this action" relate only to items that have been added to a designated list already.[195]  The designated lists are the source

---

[193] *ACCG*, 698 F.3d at 183.

[194] 19 U.S.C. § 2604.

[195] JA 1393 (Mar. 31, 2017 Mem. Op.) (citing to 19 U.S.C. §§ 2606, 2609, 2610).

-63-

of notice to importers and the Fourth Circuit held that those lists do provide fair notice.[196]

Finally, the existence of this litigation and the Guild's 30(b)(6) deposition show that the Guild had fair notice as to the items to be seized. This case was a "test case" for the Guild in which they purposefully selected coins that would be seized under the CPIA.[197] The Guild made their selections by consulting the designated lists and the regulations and then assembling a package of coins "with the full expectation they would be seized."[198]

### 3. The Guild brought the same alleged irregularities in the CPIA's implementation to the Fourth Circuit's attention in the previous action and this Court found no merit in those arguments.

Finally, the Guild assigns fundamental error to both the district court and this Court's assessment of the CPIA's underlying legitimacy, arguing that both courts remained unaware of supposed irregularities in the implementation of the CPIA and the designated lists.

---

[196] *Id.*; *ACCG*, 698 F.3d at 183.

[197] JA 666--67 (Sayles Dep.).

[198] JA 392 (Pett Dep.). *See also*, JA 665--67, 677--80, 685 (Sayles Dep.).

Far from it, the Guild raised nearly the same alleged irregularities in this action as it did in its DJ action.  For example, the Guild's opening brief draws the court's attention to the following fact:

> After CPAC rejected a last minute effort to add import restrictions on coins, advocates for import restrictions redoubled their efforts by taking the matter to Under Secretary of State Nicholas Burns who was to receive an award from a Greek Cypriot lobbying group.[199]

The Guild sounded the same alarm in its Reply Brief in the DJ Appeal, when it stated:

> After CPAC rebuffed a last-minute effort to add import restrictions on Cypriot coins, then State Undersecretary Nicholas Burns ordered such import restrictions anyway as a "thank you" to Greek and Cypriot-American advocacy groups which had given him an award.[200]

In another example, the Guild's opening brief in this case notes, "The State Department then misled Congress and the public about CPAC's true recommendations about coins in official government reports."[201]  The Guild's reply in the DJ Appeal, filed five years ago, informs this Court of the same allegation:

---

[199] Ap. Br. at 29.

[200] Reply Brief for Appellant at 9, *ACCG v. U.S. Customs and Border Protection*, No. 11-2012 (4th Cir. Feb. 13, 2012), ECF No. 51-1 [Hereafter, "Rep. Br."].

[201] Ap. Br. at 30.

"State then misled Congress and the public about CPAC's true recommendations against import restrictions on coins."[202]

These are but two examples of the parroted allegations of bad faith this court already considered in the DJ Appeal.  The Fourth Circuit ultimately rejected all of these arguments, both in refusing to declare the CPIA invalid in its 2012 opinion, and in denying the Guild's petition for *en banc* review, which again raised a number of these bad faith allegations.  It should reject them again here.

## VI.    CONCLUSION

For the foregoing reasons, the decision of the district court should be affirmed.

Respectfully submitted,

Stephen M. Schenning
United States Attorney

s/ Molissa H. Farber
Assistant United States Attorney
U.S. Attorney's Office
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4862

*Counsel for Plaintiff-Appellee*

---

[202] Rep. Br. at 10.

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. __17-1625__    Caption:  __United States of America v. 3 Knife-Shaped Coins;__
__7 Cypriot Coins; 5 other Chinese Coins__

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   X    this brief contains 12,800 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   X    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 pt., *or*

   ☐    This brief has been prepared in monospace typeface using _____ with _____.

Dated:  September 1, 2017            s/  Molissa H. Farber
                                     Molissa H. Farber
                                     Assistant United States Attorney

                                     *Counsel for Plaintiff-Appellee*

## **CERTIFICATE OF SERVICE**

I certify that on this 1st day of September 2017, the foregoing Brief for Appellee was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy by first-class, postage-prepaid mail, addressed as follows:

> Jason H. Ehrenberg
> Peter K. Tompa
> Bailey & Ehrenberg, PLLC
> 1015 18th Street, N.W., Suite 204
> Washington, DC 20036
> (202) 331-4209

s/Molissa H. Farber
Molissa H. Farber
Assistant United States Attorney

*Counsel for Plaintiff-Appellee*